## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ————————————————— x | |
| TRUNETTA ROACH individually and on behalf of all others similarly situated, | :<br>:<br>: Case No. 2:24-cv-281 |
| Plaintiff, | :<br>: |
| v. | :<br>: |
| HEALTHEC, LLC, | : **CLASS ACTION COMPLAINT**<br>:<br>: <u>**JURY TRIAL DEMANDED**</u> |
| Defendant. | :<br>: |
| ————————————————— x | |

Plaintiff Trunetta Roach ("Plaintiff") brings this Class Action Complaint ("Complaint") against Defendant HealthEC, LLC ("HealthEC") individually and on behalf of all others similarly situated, and alleges, upon personal knowledge as to her own actions and her counsels' investigation, and upon information and belief as to all other matters, as follows:

### INTRODUCTION

1. This Class Action arises from a breach of sensitive information in the possession and custody and/or control of the Defendant (the "Data Breach").

2. The Data Breach resulted in the unauthorized disclosure, exfiltration, and theft of consumers' highly personal information, including name, address, date of birth, Social Security number, and medical record number ("personal identifying information" or "PII"), medical information (such as diagnosis, diagnosis code, mental/physical condition, prescription information, and provider's name), health insurance information (such as beneficiary number, subscriber number, Medicaid/Medicare identification), and/or billing and claims information (such as patient account number, patient identification number, and treatment cost information)

("protected health information" or "PHI"). Plaintiff refers to both PII and PHI collectively as "Sensitive Information."

3.      According to a letter received by Plaintiff from Defendant, the Data Breach occurred between July 14, 2023 and July 23, 2023. Defendant advises it began notifying its clients of the Data Breach on October 26, 2023. Accordingly, cybercriminals had unrestricted and unrestrained access to Plaintiff's and the Class's highly private Sensitive Information for months.

4.      Defendant sent Plaintiff the breach notification letter referenced above on December 22, 2023 ("Notice Letter")[1] to inform her of the Data Breach. Thus, Defendant inexplicably waited months before informing Class Members of the Data Breach, even though Plaintiff and the Class Members had their Sensitive Information accessed, exfiltrated, and stolen, causing them to suffer ascertainable losses in the form of the loss of the benefit of their bargain and the value of their time reasonably incurred to remedy or mitigate the effects of the attack.

5.      Defendant's Notice Letter failed to tell consumers how many people were impacted, how the breach happened, or why it took Defendant months to begin notifying victims that hackers had gained access to highly private Sensitive Information.

6.      News reporting indicates that approximately 4.4 million individuals were impacted by the Data Breach.[2]

7.      Defendant's failure to timely detect and report the Data Breach made its customers vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their Sensitive Information.

8.      Defendant knew or should have known that each victim of the Data Breach

---

[1] A copy of the Notice Letter sent to Plaintiff is attached hereto as Exhibit A.
[2] https://www.scmagazine.com/news/healthec-hack-exposed-4-5m-patient-records-from-18-providers

deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of PII and PHI misuse.

9.     In failing to adequately protect Plaintiff's and the Class's Sensitive Information, failing to timely and adequately notify them about the breach, and by obfuscating the nature of the breach, Defendant violated state and federal law and harmed millions of consumers.

10.     Plaintiff and members of the proposed Class are victims of Defendant's negligence and inadequate cyber security measures and have been damaged as detailed herein.

11.     Accordingly, Plaintiff, individually and on behalf of a class of similarly situated individuals, brings this lawsuit seeking injunctive relief, damages, and restitution, the calculation of which will be based on information in Defendant's possession, as well as costs and reasonable attorneys' fees.

## PARTIES

12.     Plaintiff Trunetta Roach is a natural person and citizen of Michigan, residing in Detroit, Michigan, where she intends to remain.

13.     Defendant HealthEC, LLC is a limited liability company formed under the state laws of Delaware, with its principal place of business located in Edison, New Jersey.

## JURISDICTION AND VENUE

14.     This Court has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because Plaintiff and at least one member of the putative Class, as defined below, are citizens of a different state than Defendant; there are more than 100 putative class members; and the amount in controversy exceeds $5 million exclusive of interest and costs.

15.     This Court has general personal jurisdiction over Defendant HealthEC because

Defendant HealthEC maintains its principal place of business in Edison, NJ, regularly conducts business in New Jersey, and has sufficient minimum contacts in New Jersey.

16.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant HealthEC's principal place of business is in this District, and a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## STATEMENT OF FACTS

17.    Defendant is a limited liability company that delivers fully integrated analytics and insights that enable value-based health systems and care organizations to identify high-risk patients, close care gaps, and recognize barriers to optimal care.[3]

18.    Defendant claims that its "data agnostic, AI-enabled solution ingests all available data — integrating clinical with claims data to create a community health record for each patient. By seamlessly connecting everyone across any healthcare system, a full picture of the patient continuum of care becomes more apparent. HealthEC delivers robust, useful reports that enable care coordinators to improve patient outcomes."[4]

19.    In order to obtain medical services from Defendant's clients, Defendant requires its clients' patients to provide sensitive and confidential Sensitive Information, including their names, dates of birth, PHI, and other sensitive information.

20.    The information held by Defendant in its computer systems included the unencrypted Sensitive Information of Plaintiff and Class Members.

21.    Upon information and belief, Defendant made promises and representations to its clients' patients that the Sensitive Information collected from them as a condition of obtaining medical services at Defendant's clients would be kept safe, confidential, that the privacy of that

---

[3] https://www.healthec.com/
[4] *Id.*

information would be maintained, and that Defendant would delete any sensitive information after it was no longer required to maintain it.

22.     As part of its business, Defendant receives and maintains the Sensitive Information of millions of consumers. In doing so, Defendant implicitly promises to safeguard their Sensitive Information.

23.     In collecting and maintaining consumers' Sensitive Information, Defendant agrees to safeguard the data in accordance with state and federal law.

24.     Defendant represents to consumers and the public that it possesses robust security features to protect PII and PHI and that it takes its responsibility to protect PII and PHI seriously: "HealthEC has implemented generally accepted standards of technology and operational security in order to protect Personal Info from loss, misuse, alteration, or destruction. Only authorized HealthEC personnel are provided access to Personal Info, and these employees are required to treat this information as confidential."[5]

25.     On information and belief, Defendant has not implemented reasonable cybersecurity safeguards or policies to protect its consumers' Sensitive Information or supervised its IT or data security agents and employees to prevent, detect, and stop breaches of their systems. As a result, Defendant leaves significant vulnerabilities in its systems for cybercriminals to exploit and gain access to consumers' Sensitive Information.

***The Data Breach***

26.     Defendant collects and maintain consumers' Sensitive Information in its computer systems.

27.     Following an investigation, HealthEC discovered that cybercriminals had—

---

[5] https://www.healthec.com/

between July 14, 2023, and July 23, 2023—accessed electronically stored personal information stored on its network.

28.    Defendant's Breach Notice admits that Plaintiff's and Class Members' Sensitive Information was accessed without authorization.

29.    The compromised Sensitive Information includes names, addresses, dates of birth, Social Security numbers, medical information (such as diagnosis, diagnosis code, mental/physical condition, prescription information, and provider's name), health insurance information (such as beneficiary number, subscriber number, Medicaid/Medicare identification), and/or billing and claims information (such as patient account number, patient identification number, and treatment cost information).

30.    In collecting and maintaining Sensitive Information, Defendant implicitly agrees that it will safeguard the data using reasonable means according to its internal policies, as well as state and federal law.

31.    Defendant's investigation revealed that its cyber and data security systems were inadequate and allowed cybercriminals to obtain files containing a treasure trove of thousands of its consumers' highly private Sensitive Information.

32.    On December 22, 2023, more than five months after the Breach first occurred, Defendant finally notified Plaintiff about the Data Breach.

33.    Through its Breach Notice, Defendant recognized the actual imminent harm and injury that flowed from the Data Breach, so it encouraged breach victims to remain vigilant for incidents of fraud or identity theft by reviewing their account statements and free credit reports for any unauthorized activity.

34.    On information and belief, Defendant failed to adequately train and supervise its

IT and data security agents and employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over its consumers' Sensitive Information. Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the Sensitive Information.

***The Data Breach Was a Foreseeable Risk of which Defendant Was on Notice.***

35.    Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in the healthcare industry and healthcare adjacent industry preceding the date of the breach.

36.    In light of recent high profile data breaches at other healthcare partner and provider companies, Defendant knew or should have known that its electronic records and consumers' Sensitive Information would be targeted by cybercriminals.

37.    Cyberattacks on medical systems and healthcare partner and provider companies like Defendant have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive. . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[6]

38.    Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

***Plaintiff Roach's Experience***

39.    As a requisite to receiving medical services, Plaintiff provided her Sensitive Information to certain caregivers who then provided the information to Defendant with the understanding that Defendant would safeguard that information according to state and federal

---

[6] Secret Service Warn of Targeted, Law360, https://www.law360.com/articles/1220974/fbi-secret-service-warn-of- targeted-ransomware (last visited November 13, 2023).

law. Upon receipt, Plaintiff's Sensitive Information was entered and stored in Defendant's network and systems.

40.    Plaintiff is very careful about sharing her Sensitive Information, and she has never knowingly transmitted unencrypted Sensitive Information.

41.    Plaintiff stores any documents containing her Sensitive Information in a safe and secure location or destroys the documents. Moreover, Plaintiff diligently chooses unique usernames and passwords for her various online accounts. Had she known Defendant failed to follow basic industry security standards and failed to implement systems to protect her Sensitive Information, she would not have permitted Defendant to acquire her Sensitive Information.

42.    The Breach Notice dated December 22, 2023, from Defendant notified Plaintiff that its network had been accessed and Plaintiff's Sensitive Information was involved in the Data Breach, which included Plaintiff's name, address, date of birth, Social Security number, and medical record number, medical information (such as diagnosis, diagnosis code, mental/physical condition, prescription information, and provider's name), health insurance information (such as beneficiary number, subscriber number, Medicaid/Medicare identification), and/or billing and claims information (such as patient account number, patient identification number, and treatment cost information).

43.    Plaintiff has spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice Letter and self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured. Moreover, this time was spent at Defendant's direction by way of the Notice Letter where Defendant advised Plaintiff to mitigate her damages by, among other things, reviewing her healthcare statements for accuracy.

44.    Even with the best response, the harm caused to Plaintiff cannot be undone.

45.    Plaintiff further suffered actual injury in the form of damages to and diminution in the value of Plaintiff's Sensitive Information—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and as a result of the Data Breach.

46.    She also lost her benefit of the bargain by paying for medical services that failed to provide the data security that was promised.

47.    Plaintiff suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of her privacy.

48.    Plaintiff has suffered imminent and impending injury arising from the present and ongoing risk of fraud, identity theft, and misuse resulting from her Sensitive Information being placed in the hands of unauthorized third parties and possibly criminals.

49.    Future identity theft monitoring is reasonable and necessary and such services will include future costs and expenses.

50.    Plaintiff has a continuing interest in ensuring that her Sensitive Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

***The Value of PII and PHI***

51.    It is well known that PII and PHI, and social security numbers and financial account information in particular, are invaluable commodities and frequent targets of hackers.

52.    According to Javelin Strategy & Research, in 2017 alone over 16.7 million individuals were affected by identity theft, causing $16.8 billion to be stolen.[7]

---

[7] Javelin Strategy & Research, *Identity Fraud Hits All Time High With 16.7 Million U.S. Victims in 2017, According to New Javelin Strategy & Research Study* (Feb. 6, 2018), https://www.javelinstrategy.com/press-release/identity-fraud-hits-all-time-high-167-million-us-victims-2017-according-new-javelin.

53.    People place a high value not only on their PII and PHI, but also on the privacy of that data. This is because identity theft causes "significant negative financial impact on victims" as well as severe distress and other strong emotions and physical reactions.[8]

54.    People are particularly concerned with protecting the privacy of their financial account information and social security numbers, which are the "secret sauce" that is "as good as your DNA to hackers."[9] There are long-term consequences to data breach victims whose social security numbers are taken and used by hackers. Even if they know their social security numbers have been accessed, Plaintiffs and Class members cannot obtain new numbers unless they become a victim of social security number misuse. Even then, the Social Security Administration has warned that "a new number probably won't solve all [] problems . . . and won't guarantee . . . a fresh start."[10]

55.    The PII and PHI of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[11] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[12] Criminals can also purchase access

---

[8] Identity Theft Resource Center, *Identity Theft: The Aftermath 2017*, https://www.ftc.gov/system/files/documents/public_comments/2017/10/00004-141444.pdf.
[9] Cameron Huddleston, *How to Protect Your Kids From the Anthem Data Breach*, Kiplinger, (Feb. 10, 2015), https://www.kiplinger.com/article/credit/T048-C011-S001-how-to-protect-your-kids-from-the-anthem-data-brea.html.
[10] Social Security Admin., *Identity Theft and Your Social Security Number*, at 6-7, https://www.ssa.gov/pubs/EN-05-10064.pdf.
[11] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/.
[12] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/.

to entire company data breaches from $900 to $4,500.[13]

56.    Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[14]

57.    What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

58.    Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[15]

---

[13] *In the Dark*, VPNOverview, 2019, https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/.
[14] Social Security Administration, *Identity Theft and Your Social Security Number*, https://www.ssa.gov/pubs/EN-05-10064.pdf.
[15] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-

59.    Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change.

60.    This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[16]

61.    Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

62.    The fraudulent activity resulting from the Data Breach may not come to light for years.

63.    There may be a time lag between when harm occurs versus when it is discovered, and also between when PII and PHI is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[17]

---

millionsworrying-about-identity-theft.

[16] Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.

[17] *Report to Congressional Requesters*, GAO, at 29 (June 2007), https://www.gao.gov/assets/gao-07-737.pdf.

64.     At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the PII and PHI of Plaintiff and Class members, including Social Security numbers, and of the foreseeable consequences that would occur if its data security system were breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class members as a result of a breach.

65.     Plaintiff and Class members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. Plaintiff and Class members are incurring and will continue to incur such damages in addition to any fraudulent use of their PII and PHI.

66.     Defendant was, or should have been, fully aware of the unique type and the significant volume of data contained in the PII and PHI that Defendant stored unencrypted, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

67.     The injuries to Plaintiff and Class members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the PII and PHI of Plaintiff and Class members.

***Defendant Failed to Comply with Industry Standards***

68.     In light of the numerous high-profile data breaches targeting companies like Target, Neiman Marcus, eBay, Anthem, Deloitte, Equifax, Marriott, T-Mobile, and Capital One, Defendant is, or reasonably should have been, aware of the importance of safeguarding PII and PHI, as well as of the foreseeable consequences of its systems being breached.

69.     Security standards commonly accepted among businesses that store PII and PHI using the internet include, without limitation:

    a.   Maintaining a secure firewall configuration;

    b.   Monitoring for suspicious or irregular traffic to servers;

    c.   Monitoring for suspicious credentials used to access servers;

    d.   Monitoring for suspicious or irregular activity by known users;

    e.   Monitoring for suspicious or unknown users;

    f.   Monitoring for suspicious or irregular server requests;

    g.   Monitoring for server requests for PII and PHI;

    h.   Monitoring for server requests from VPNs; and

    i.   Monitoring for server requests from Tor exit nodes.

70.    Other best cybersecurity practices that are standard practices include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points. Defendant failed to follow these cybersecurity best practices, including failure to train staff.

71.    The U.S. Federal Trade Commission ("FTC") publishes guides for businesses for cybersecurity[18] and protection of PII and PHI[19] which includes basic security standards applicable to all types of businesses.

72.    The FTC recommends that businesses:

    a.   Identify all connections to the computers where you store sensitive information.

    b.   Assess the vulnerability of each connection to commonly known or reasonably

---

[18] Start with Security: A Guide for Business, FTC (June 2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.
[19] Protecting Personal Information: A Guide for Business, FTC (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting personalinformation.pdf.

foreseeable attacks.

c.  Do not store sensitive consumer data on any computer with an internet connection unless it is essential for conducting their business.

d.  Scan computers on their network to identify and profile the operating system and open network services. If services are not needed, they should be disabled to prevent hacks or other potential security problems. For example, if email service or an internet connection is not necessary on a certain computer, a business should consider closing the ports to those services on that computer to prevent unauthorized access to that machine.

e.  Pay particular attention to the security of their web applications—the software used to give information to visitors to their websites and to retrieve information from them. Web applications may be particularly vulnerable to a variety of hacker attacks.

f.  Use a firewall to protect their computers from hacker attacks while it is connected to a network, especially the internet.

g.  Determine whether a border firewall should be installed where the business's network connects to the internet. A border firewall separates the network from the internet and may prevent an attacker from gaining access to a computer on the network where sensitive information is stored. Set access controls—settings that determine which devices and traffic get through the firewall—to allow only trusted devices with a legitimate business need to access the network. Since the protection a firewall provides is only as effective as its access controls, they should be reviewed periodically.

h.  Monitor incoming traffic for signs that someone is trying to hack in. Keep an eye out for activity from new users, multiple log-in attempts from unknown users or computers, and higher-than-average traffic at unusual times of the day.

i.  Monitor outgoing traffic for signs of a data breach. Watch for unexpectedly large amounts of data being transmitted from their system to an unknown user. If large amounts of information are being transmitted from a business' network, the transmission should be investigated to make sure it is authorized.

73.  The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer information, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet

their data security obligations.[20]

74.    As noted above, experts studying cyber security routinely identify entities in possession of PII and PHI as being particularly vulnerable to cyberattacks because of the value of the Sensitive Information which they collect and maintain.

75.    Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

76.    These foregoing frameworks are existing and applicable industry standards for an employer's obligations to provide adequate data security for its employees.

77.    Upon information and belief, Defendant failed to comply with at least one––or all—of these accepted standards, thereby opening the door to the threat actor and causing the Data Breach.

78.    Because Defendant was entrusted with PII and PHI, it had, and has, a duty to keep the PII and PHI secure.

79.    Plaintiff and Class members reasonably expect that when their PII and PHI is provided to a sophisticated business for a specific purpose, that business will safeguard their PII and PHI and use it only for that purpose.

80.    Nonetheless, Defendant failed to prevent the Data Breach. Had Defendant properly

---

[20] Federal Trade Commission, *Privacy and Security Enforcement: Press Releases*, https://www.ftc.gov/news-events/media-resources/protecting-consumer-privacy/privacy-security-enforcement.

maintained and adequately protected its systems, it could have prevented the Data Breach.

***Defendant Failed to Adhere to FTC guidelines.***

81.    In 2016, the Federal Trade Commission ("FTC") updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business.  The guidelines explain that businesses should:

    a.   protect the sensitive consumer information that they keep;

    b.   properly dispose of Sensitive Information that is no longer needed;

    c.   encrypt information stored on computer networks;

    d.   understand their network's vulnerabilities; and

    e.   implement policies to correct security problems.

82.    The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

83.    The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

84.    The FTC has brought enforcement actions against businesses for failing to protect consumer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures

businesses must take to meet their data security obligations.

85.    Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' Sensitive Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Violated HIPAA***

86.    HIPAA circumscribes security provisions and data privacy responsibilities designed to keep patients' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information.[21]

87.    HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of PII and PHI is properly maintained.[22]

88.    The Data Breach itself resulted from a combination of inadequacies showing Defendant's failure to comply with safeguards mandated by HIPAA. Defendant's security failures include, but are not limited to:

a.    Failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

b.    Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

---

[21] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, inter alia: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.
[22] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

c. Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d. Failing to ensure compliance with HIPAA security standards in violation of 45 C.F.R. § 164.306(a)(4);

e. Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f. Failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g. Failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h. Failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

i. Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

19

89.     Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrate Defendant failed to comply with safeguards mandated by HIPAA regulations.

***Plaintiff and the Proposed Class Have Been Injured***

90.     Plaintiff and members of the proposed Class have suffered injury from the misuse of their Sensitive Information that can be directly traced to Defendant.

91.     As a result of Defendant's carelessness, recklessness, negligence and inadequacy, Plaintiff's and Class Members' Sensitive Information has been compromised and they now face an ongoing risk of identity theft, which is heightened for many Class Members by the loss of Social Security numbers – the gold standard for identity thieves. The exposed Sensitive Information of Plaintiff and Class Members can, and likely will, be sold repeatedly on the dark web.

92.     In addition to the ongoing risk of identity theft, those impacted by the Data Breach have suffered numerous actual and concrete injuries and damages, including:

    a.  invasion of privacy;

    b.  financial "out of pocket" costs incurred mitigating the materialized risk and imminent threat of identity theft;

    c.  loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk;

    d.  financial "out of pocket" costs incurred due to actual identity theft;

    e.  loss of time incurred due to actual identity theft;

    f.  loss of time due to increased spam and targeted marketing emails;

    g.  the loss of benefit of the bargain (price premium damages);

    h.  diminution of value of their Sensitive Information;

    i.   anxiety, annoyance and nuisance, and

    j.   the continued risk to their Sensitive Information, which remains in the possession of Defendant, and which is subject to further breaches, so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' Sensitive Information.

    k.   The loss of the opportunity to control how their Sensitive Information is used;

    l.   The compromise and continuing publication of their Sensitive Information;

    m.   Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud; and

    n.   Delay in receipt of tax refund monies.

## CLASS ACTION ALLEGATIONS

93.    Plaintiff sues on behalf of herself and the proposed nationwide class ("Class"), defined as follows, pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3):

**Nationwide Class**: All individuals residing in the United States whose Sensitive Information was compromised in the Defendant's Data Breach including all those who received notice of the breach.

94.    Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any of Defendant's officers or directors, any successors, and any Judge who adjudicates this case, including their staff and immediate family.

95.    Plaintiff reserves the right to amend the class definition.

96.     This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23.

    a. **Numerosity**. Plaintiff is a representative of the Class, consisting of approximately 4.4 million members, far too many to join in a single action;

    b. **Ascertainability**. Members of the Class are readily identifiable from information in Defendant's possession, custody, and control;

    c. **Typicality**. Plaintiff's claims are typical of class claims as each claim arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

    d. **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's interests. Plaintiff's interests do not conflict with the Class's interests, and she has retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including as lead counsel.

    e. **Commonality**. Plaintiff's and the Class's claims raise predominantly common fact and legal questions that a class wide proceeding can answer for the Class. Indeed, it will be necessary to answer the following questions:

        i. Whether Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's Sensitive Information;

        ii. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

        iii. Whether Defendant was negligent in maintaining, protecting, and

securing Sensitive Information;

iv.  Whether Defendant breached contract promises to safeguard Plaintiff's and the Class's Sensitive Information;

v.  Whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

vi.  Whether Defendant's Breach Notice was reasonable;

vii.  Whether the Data Breach caused Plaintiff's and the Class's injuries;

viii.  What the proper damages measure is; and

ix.  Whether Plaintiff and the Class are entitled to damages, treble damages, or injunctive relief.

97.    Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to adjudicate the controversy fairly and efficiently. The damages available to individual plaintiffs are insufficient to make individual lawsuits economically feasible.

### COUNT I
### Negligence
### (On Behalf of Plaintiff and the Class)

98.    Plaintiff realleges all previous paragraphs as if fully set forth below.

99.    Plaintiff and members of the Class entrusted their Sensitive Information to Defendant.

100.    Defendant owed to Plaintiff and the Class a duty to exercise reasonable care in handling and using the Sensitive Information in its care and custody, including implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at

unauthorized access.

101.    Defendant owed a duty of care to Plaintiff and members of the Class because it was foreseeable that Defendant's failure to adequately safeguard their Sensitive Information in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that Sensitive Information. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and the Class's Sensitive Information by disclosing and providing access to this information to unauthorized third parties and by failing to properly supervise both the way the Sensitive Information was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

102.    Defendant owed to Plaintiff and members of the Class a duty to notify them within a reasonable timeframe of any breach to the security of their Sensitive Information. Defendant also owed a duty to timely and accurately disclose to Plaintiff and members of the Class the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiff and the Class to take appropriate measures to protect their Sensitive Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

103.    Defendant owed these duties to Plaintiff and members of the Class because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security protocols. Defendant actively sought and obtained Plaintiff's and the Class's Sensitive Information.

104.    The risk that unauthorized persons would attempt to gain access to the Sensitive

Information and misuse it was foreseeable. Given that Defendant holds vast amounts of Sensitive Information, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the Sensitive Information.

105.    Sensitive Information is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Sensitive Information of Plaintiff and the Class and the importance of exercising reasonable care in handling it.

106.    Defendant breached its duties by failing to exercise reasonable care in supervising its employees, agents, contractors, vendors, and suppliers, and in handling and securing the Sensitive Information of Plaintiff and the Class which actually and proximately caused the Data Breach and Plaintiff's and the Class's injury. Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and members of the Class, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff's and members of the Class's injuries-in-fact. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and the Class have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

107.    Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and members of the Class actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their Sensitive Information by criminals, improper disclosure of their Sensitive Information, lost benefit of their bargain, lost value of their Sensitive Information, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent,

immediate, and which they continue to face.

## COUNT II
### Negligence *Per Se*
### (On Behalf of Plaintiff and the Class)

108. Plaintiff realleges all previous paragraphs as if fully set forth below.

109. Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and the Class's Sensitive Information.

110. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect customers' Sensitive Information. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff's and the members of the Class's Sensitive Information.

111. Defendant breached its duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Sensitive Information.

112. Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its consumers, which is recognized by laws and regulations including but not limited to HIPAA, as well as common law. Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a Data Breach.

113. Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional

use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(l). Some or all of the healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

114.    Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Sensitive Information.

115.    Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiff's and the Class's Sensitive Information and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Sensitive Information Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

116.    The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

117.    Defendant violated its duty under HIPAA by failing to use reasonable measures to protect PHI and by not complying with applicable regulations detailed supra. Here too, Defendant's conduct was particularly unreasonable given the nature and amount of Sensitive Information Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of

a breach, which ultimately came to pass.

118.    But for Defendant's wrongful and negligent breach of the duties owed to Plaintiff and members of the Class, Plaintiff and members of the Class would not have been injured.

119.    The injury and harm suffered by Plaintiff and members of the Class were the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their Sensitive Information.

120.    Had Plaintiff and the Class known that Defendant did not adequately protect their Sensitive Information, Plaintiff and members of the Class would not have entrusted Defendant with their Sensitive Information.

121.    Defendant's various violations and its failure to comply with applicable laws and regulations constitute negligence *per se*.

122.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; lost control over the value of Sensitive Information; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen Sensitive Information, entitling them to damages in an amount to be proven at trial.

123.    Additionally, as a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class members have suffered and will suffer the continued risks of exposure of their Sensitive Information, which remains in Defendant's possession and is subject to further

unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect their Sensitive Information in its continued possession.

**COUNT III**
**Third Party Beneficiary to Breach of Contract**
**(On Behalf of Plaintiff and the Class)**

124.    Plaintiff realleges all previous paragraphs as if fully set forth below.

125.    Plaintiff's and Class Members' health providers were required to provide Plaintiff's and Class Member's Sensitive Information to Defendant as a condition of their use of Defendant's services.   Upon information and belief, this relationship was subject to a contractual agreement between Defendant, Plaintiff's  and Class Members' health care providers, and Plaintiff and the Class Members who are third party beneficiaries to that contract.

126.   Plaintiff and Class Members, through their health providers, paid money to Defendant in exchange for services, along with Defendant's promise to protect their Sensitive Information from unauthorized access and disclosure.

127.   Expressly stated or implicit in the agreement discussed above was Defendant's obligation to: (a) use such Plaintiff's and Class Members' Sensitive Information for business purposes only, (b) take reasonable steps to safeguard that Sensitive Information, (c) prevent unauthorized disclosures of the Sensitive Information, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Sensitive Information, (e) reasonably safeguard and protect the Sensitive Information of Plaintiff and Class Members from unauthorized disclosure or uses, and (f) retain the Sensitive Information only under conditions that kept such information secure and confidential.

128.   When Plaintiff and Class Members provided their PII and PHI to Defendant through their providers, they entered into implied contracts with Defendant pursuant to which

Defendant agreed to reasonably protect such information.

129.   In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards.

130.   Plaintiff and Class Members would not have entrusted their Sensitive Information to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure, including monitoring its computer systems and networks to ensure that it adopted reasonable data security measures.

131.   Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

132.   Defendant breached its implied contracts with Plaintiff and Class Members by failing to safeguard and protect their Sensitive Information.

133.   As a direct and proximate result of Defendant's breaches of the implied contracts, Plaintiff and Class Members sustained damages as alleged herein.

134.   Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

135.   Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide and continue to provide adequate credit monitoring to all Class Members.

**COUNT IV**
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiff and the Class)**

136.  Plaintiff realleges all previous paragraphs as if fully set forth below.

137.  In providing their Sensitive Information to Defendant and/or by Defendant accepting their Sensitive Information from Plaintiff's and Class Members' healthcare providers, Plaintiff and Class Members justifiably placed a special confidence in Defendant to act in good faith and with due regard for the interests of Plaintiff and Class Members to safeguard and keep confidential that Sensitive Information.

138.  Defendant accepted the special confidence Plaintiff and Class Members placed in it, as evidenced by its assertion that it is committed to protecting the privacy of Plaintiff's personal information as stated in the Data Breach notification letter.

139.  In light of the special relationship between Defendant, Plaintiff, and Class Members, whereby Defendant became guardians of Plaintiff and Class Members' Sensitive Information, Defendant became a fiduciary to act primarily for the benefit of its customers, including Plaintiff and Class Members, for the safeguarding of Plaintiff's and Class Members' Sensitive Information.

140.  Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of its customer relationships including, in particular, to keep secure the Sensitive Information of customers.

141.  Defendant breached its fiduciary duties to Plaintiff and Class Members by failing to protect the integrity of the systems containing Plaintiff's and Class Members' Sensitive Information.

142.  Defendant breached its fiduciary duties to Plaintiff and Class Members by otherwise failing to safeguard Plaintiff's and Class Members' Sensitive Information.

143.  As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to:

    a.   Actual identity theft;

    b.   The compromise, publication, and/or theft of their Sensitive Information;

    c.   Out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Sensitive Information;

    d.   Lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft;

    e.   The continued risk to their Sensitive Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Sensitive Information in its continued possession;

    f.   Future costs in terms of time, effort, and money that will be expended as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members; and

    g.   The diminished value of the services they paid for and received.

144.    As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff and Class Members will suffer other forms of injury and/or harm, and other economic and non-economic losses.

**COUNT V**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

145.    Plaintiff realleges all previous paragraphs as if fully set forth below.

146.    Plaintiff and members of the Class conferred a benefit upon Defendant in

providing Sensitive Information to Defendant.

147.    Defendant appreciated or had knowledge of the benefits conferred upon it by Plaintiff and the Class. Defendant also benefited from the receipt of Plaintiff's and the Class's Sensitive Information, as this was used to facilitate the services and goods it sold to their consumers, including Plaintiff's and the Class.

148.    Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and the Class's Sensitive Information because Defendant failed to adequately protect their Sensitive Information. Plaintiff and the proposed Class would not have provided their Sensitive Information to Defendant had they known Defendant would not adequately protect their Sensitive Information.

149.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and members of the Class all unlawful or inequitable proceeds received by it because of its misconduct and Data Breach.

**COUNT VI**
**Declaratory and Injunctive Relief**
**(On Behalf of Plaintiff and the Class)**

150.    Plaintiff realleges all previous paragraphs as if fully set forth below.

151.    Plaintiff pursues this claim under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, et seq.

152.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and granting further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal statutes described in this Complaint.

153.    An actual controversy has arisen in the wake of the Data Breach regarding

Defendant's present and prospective common law and other duties to reasonably safeguard Plaintiff's and Class Members' Sensitive Information, and whether Defendant is currently maintaining data security measures adequate to protect Plaintiff and Class Members from future data breaches that compromise their Sensitive Information. Plaintiff and the Class remain at imminent risk that further compromises of their Sensitive Information will occur in the future.

154.    The Court should also issue prospective injunctive relief requiring Defendant to employ adequate security practices consistent with law and industry standards to protect Sensitive Information.

155.    Defendant still possesses the Sensitive Information of Plaintiff and the Class.

156.    To Plaintiff's knowledge, Defendant has made no announcement that it has changed its data storage or security practices relating to their Sensitive Information.

157.    To Plaintiff's knowledge, Defendant has made no announcement or notification that it has remedied the vulnerabilities and negligent data security practices that led to the Data Breach.

158.    If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy in the event of another data breach of Defendant's computers. The risk of another such breach is real, immediate, and substantial.

159.    As described above, actual harm has arisen in the wake of the Data Breach regarding Defendant's contractual obligations and duties of care to provide security measures to Plaintiff and Class Members. Further, Plaintiff and Class members are at risk of additional or further harm due to the exposure of their Sensitive Information and Defendant's failure to address the security failings that led to such exposure.

160.    There is no reason to believe that Defendant's employee training and security

measures are any more adequate now than they were before the breach to meet Defendant's contractual obligations and legal duties.

161.    The hardship to Plaintiff and Class Members if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued. Among other things, if another data breach occurs of Defendant's computers, Plaintiff and Class Members will likely continue to be subjected to fraud, identify theft, and other harms described herein. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

162.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at Defendant's computers, thus eliminating the additional injuries that would result to Plaintiff and the Class.

163.    Plaintiff and Class Members, therefore, seek a declaration (1) that Defendant's existing data security measures do not comply with its contractual obligations and duties of care to provide adequate data security, and (2) that to comply with contractual obligations and duties of care, Defendant must implement and maintain reasonable security measures, including, but not limited to, the following:

     a.  Ordering that Defendant engage internal security personnel to conduct testing, including audits on Defendant's systems, on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

     b.  Ordering that Defendant engage third-party security auditors and internal personnel to run automated security monitoring;

c.  Ordering that Defendant audit, test, and train its security personnel and employees regarding any new or modified data security policies and procedures;

d.  Ordering that Defendant purge, delete, and destroy, in a reasonably secure manner, any Sensitive Information not necessary for its provision of services;

e.  Ordering that Defendant conduct regular database scanning and security checks; and

f.  Ordering that Defendant routinely and continually conduct internal training and education to inform internal security personnel and employees how to safely share and maintain highly sensitive personal information, including but not limited to, client personally identifiable information.

## **PRAYER FOR RELIEF**

Plaintiff and the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A.  Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing her counsel to represent the Class;

B.  Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

C.  Awarding injunctive relief as is necessary to protect the interests of Plaintiff and the Class;

D.  Enjoining Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen Sensitive Information;

E.  Awarding Plaintiff and the Class damages that include applicable compensatory,

exemplary, punitive damages, and statutory damages, as allowed by law;

F.  Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G.  Awarding attorneys' fees and costs, as allowed by law;

H.  Awarding prejudgment and post-judgment interest, as provided by law;

I.  Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J.  Granting such other or further relief as may be appropriate under the circumstances.

### **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands that this matter be tried before a jury.

Dated: January 17, 2024                    Respectfully submitted,

/s/ Michael M. Weinkowitz
Michael M. Weinkowitz
Charles E. Schaffer *
Nicholas J. Elia *
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
cschaffer@lfsblaw.com
nelia@lfsblaw.com
mweinkowitz@lfsblaw.com

Jeffrey S. Goldenberg*
Todd B. Naylor*
**GOLDENBERG SCHNEIDER, LPA**
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio 45242
Phone: (513) 345-8291
Facsimile: (513) 345-8294
jgoldenberg@gs-legal.com
tnaylor@gs-legal.com

Joseph M. Lyon*
THE LYON FIRM
2754 Erie Ave.
Cincinnati, OH 45208
Phone: (513) 381-2333
Fax: (513) 766-9011
_jlyon@thelyonfirm.com_

*Pro Hac Vice Application forthcoming*

*Counsel for Plaintiff and the Putative Class*